**This order is SIGNED.**

**Dated: March 4, 2021**



KEVIN R. ANDERSON
U.S. Bankruptcy Judge

*slo*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>DOUGLAS R. SHORT,<br><br>Debtor. | Bankruptcy Number: 19-29471<br><br>Chapter 7 |
| TELOS VENTURES GROUP, PLLC, JOHN H. BOGART, YAN ROSS, AND RANDI WAGNER,<br><br>Plaintiffs,<br>vs.<br><br>DOUGLAS R. SHORT,<br><br>Defendant. | Adversary Proceeding No. 20-02027<br><br>Hon. Kevin R. Anderson |

### MEMORANDUM DECISION GRANTING IN PART
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

The Debtor is an attorney who litigated against Plaintiffs in the Utah state courts with an unrestrained fervor that too often trespassed beyond the boundaries of ethical advocacy. As a result, the state courts sanctioned the Debtor multiple times for bad faith, frivolous, vexatious, harassing, and abusive litigation conduct. Plaintiffs filed this adversary proceeding for a determination that the sanction awards are nondischargeable under § 523(a)(6).

Plaintiffs' motion for summary judgment argues that the state courts' prior findings of facts and conclusions of law preclusively establish that the sanctions constitute a debt arising from a willful and malicious injury. The Debtor counters that the state court findings are erroneous, not final, and not sufficiently specific for claim or issue preclusion to apply.

For the reasons set forth below, the Court finds that the state court rulings are res judicata, and, except for the last sanction award under Utah R. App. P. 33, they are sufficient to grant summary judgment against the Debtor.

## I.    JURISDICTION AND VENUE

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and §§ 157(a) and (b)(2). Plaintiffs' complaint objects to the discharge of its particular claims, making this a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper in this District under 28 U.S.C. § 1409, and an adequate notice of hearing on the motion was given.

## II.    PROCEDURAL RULINGS

### A.  The Debtor's Response to the Motion for Summary Judgment Fails to Comply with the Local and Federal Rules.

The Court finds that the Debtor failed to comply with the Bankruptcy Court's local rule and Fed. R. Civ. P. 56 with respect to the requirements for opposing a motion for summary judgment. Rule 56(c), as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7056, requires that the party asserting a fact as disputed must support that assertion by a citation to the record, by challenging the admissibility of the evidence, or by an affidavit. Fed. R. Civ. P. 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the court may "consider the fact

undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."

The Bankruptcy Court's Local Rule 7056-1(d)(2)(B) requires that a memorandum in opposition to summary judgment include a section entitled "Response to Statement of Elements and Undisputed Material Facts" setting forth the following: (1) a concise response to each legal element stated by the moving party; (2) a response to each stated material fact; (3) a statement of additional material facts, if applicable; and (4) a statement of additional elements and material facts, if applicable.[1]

The Local Rule's organizational scheme assists the Court and the litigants in identifying the facts that are in genuine dispute, and the legal elements that have not been met. In furtherance thereof, the Rule requires the memorandum in opposition to "restate each numbered paragraph from the statement of material facts provided in support of that element in the motion." To identify disputed facts, the Rules requires the memorandum to "concisely describe and cite with particularity the evidence on which the non-moving party relies to dispute that fact (without legal argument)."[2]

The Debtor's memorandum in opposition ignores the above-described organizational schema. Specifically, it fails to identify by paragraph number which of the facts asserted by the Plaintiffs are disputed and why. Instead, the Debtor's response merely asserts 11 legal arguments in opposition to summary judgment. They can be summarized as: (1) the Utah state court rulings are all wrong; and (2) every paper the Debtor filed in *Ross v. GFS* and *Short v. Bogart* had legal support and was filed in good faith and with no intent to injure Plaintiffs. The Debtor supports his

---

[1] Local Bankr. R. 7056-1(d)(2)(A)-(D).
[2] Local Bankr. R. 7056-1(d)(2)(B).

points with an affidavit that reasserts the same arguments made by the Debtor in his multiple, unsuccessful challenges and appeals of the state court rulings.

The Debtor's failure to cite with particularity the facts he disputes and the evidence supporting his dispute, coupled with the "shot gun" approach of the Debtor's arguments, has made it more difficult for the Court to ascertain if there are any genuinely disputed facts in the Debtor's favor. However, because the Court finds that all of the facts necessary to rule on Plaintiffs' motion for summary judgment are established in the prior, final state court rulings, and given the guidance of Rule 56(e), the Court will proceed to rule on Plaintiffs' motion for summary judgment.

### B. The Court Denies the Debtor's Motion Under Fed. R. Civ. P. 56(d) to Conduct Additional Discovery Before Ruling on the Motion for Summary Judgment.

At the hearing on Plaintiff's summary judgment motion on December 8, 2020, the Debtor made an oral request under Rule 56(d) to conduct additional discovery. In his response to the motion for summary judgment, the Debtor argued that he needed to conduct to discovery to determine if Plaintiffs suffered any actual financial injury; meaning, were Plaintiffs liable to pay, or did they actually pay, their attorneys the costs and fees that were the basis for the sanction awards?[3]

Generally, Rule 56(d) permits party opposing summary judgment to demonstrate, by affidavit or declaration, the need for additional discovery. The affidavit is required to "ensure that the nonmoving party is invoking the protections of Rule [56(d)] in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition."[4] The Debtor did not file a specific Rule 56(d) affidavit in the form required by the Tenth Circuit. But in his declaration in

---

[3] ECF No. 47 at 10.

[4] *First Chicago Int'l v. United Exch. Co. Ltd.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988).

opposition to summary judgment, the Debtor alleges that he was never allowed to conduct discovery on the following: (1) whether Plaintiffs ever paid or were obligated to pay for the costs and fees awarded; and (2) whether Plaintiffs have in fact suffered any financial injury as a result of the Debtor's litigation conduct.[5] In the Tenth Circuit, a party must establish that the requested additional discovery will result in relevant facts:

> A party may not invoke Fed. R. Civ. P. 56[[d)] by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party must demonstrate precisely how additional discovery will lead to a genuine issue of material fact.[6]

As explained below, the state court rulings create in Plaintiffs an allowed bankruptcy claim against the Debtor for the sanction amounts, and this claim is sufficient under § 523(a)(6) to establish a debt for an injury. Thus, whether Plaintiffs actually paid the costs and fees to their attorneys is irrelevant to this cause of action as it has no bearing on the allowability of their claim against the Debtor for the amounts set forth in the sanction orders and judgments. Therefore, the Debtor's oral motion for leave to conduct additional discovery under Rule 56(d) is denied because such discovery will not produce facts that are relevant to this § 523(a)(6) cause of action.

### C. The Court Takes Judicial Notice of the State Courts' Decisions, Orders, and Judgments.

Starting in 2012, the Utah District Court and the Utah Court of Appeals (collectively the "State Courts") sanctioned the Debtor multiple times for his abusive litigation conduct. There is a long, contentious history among Plaintiffs and the Debtor that has resulted in a plethora of decisions, rulings, orders, judgments and appeals. Plaintiffs attached 25 exhibits to their motion for summary judgment consisting of the relevant state court rulings (the exhibits are collectively

---

[5] ECF No. 48 at 3.

[6] *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).

referred to as the "State Court Rulings").[7] The State Court Rulings contain extensive findings of

fact and conclusions of law against the Debtor. While the Debtor disputes the correctness of the

findings, he does not dispute that the exhibits are true copies of the State Court Rulings.[8] Therefore,

the Court takes judicial notice[9] of the State Court Rulings attached to Plaintiffs' motion for

summary judgment as exhibits 1-25.[10]

## III.   FACTS TO WHICH THERE CAN BE NO GENUINE DISPUTE

### A.   The *Ross v. GFS* Litigation.

1.      In 2007, Yan Ross and Randi Wagner (collectively "Ross") filed a complaint

captioned *Ross et al. v. Global Fraud Solutions, LLC.*, Case No. 07-0915820 ("*Ross v. GFS*"),

filed in the Third Judicial District Court for the State of Utah (the "State Court").[11]

2.      In 2008, the State Court entered a judgment in favor of Ross, who then sought a

writ of execution against property of GFS. The motion listed Michael Barnett ("Barnett"), the

principal of GFS, as a person who may assert an interest in the assets of GFS.[12]

3.      Barnett then intervened in *Ross v. GFS* asserting that he was the owner of a bank

account against which Ross sought to execute.[13]

---

[7] ECF No. 43, Exs. 1-25.

[8] ECF No. 47 at 2.

[9] *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (federal courts may take judicial notice of a public record from another court concerning matters that bear directly on the disposition of the case at hand) and *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings.").

[10] Because the State Court Rulings total 245 pages, the Court will cite to them by ECF No. 43 (Plaintiffs' motion for summary judgment), the docket page number (i.e. exhibit pages 43-288), and the exhibit number (i.e. 1-25). This is to create a clear record as to the specific portions of the State Court Rulings referenced in this ruling.

[11] ECF No. 43 at 43 (Ex. 1).

[12] *Id*.

[13] *Id*. at 47 (Ex. 1).

4.      In September 2008, the State Court found that Barnett lacked credibility and that
the bank account was an asset of GFS.[14] This ruling became the focal point of contention among
Plaintiffs and the Debtor.

**B.  The First Sanctions Against the Debtor.**

5.      In January 2009, the Debtor entered his appearance as counsel for Barnett and
began challenging the prior rulings of the State Court.[15]

6.      In March 2010, Ross sought Rule 11 sanctions against the Debtor based on his
continuing efforts to overturn the September 2008 ruling as to the ownership of the GFS bank
account.[16]

7.      In February 2012, the State Court entered the first Rule 11 sanctions against the
Debtor by ordering him to pay $9,600 to the court. The State Court supported its ruling with 43
pages of findings and conclusions of law.[17]

8.      Between June 2012 and October 2014, the Debtor filed 26 motions that continued
to challenge the prior rulings of the State Court. Ross again sought Rule 11 sanctions against the
Debtor.[18]

9.      In December 2014, the State Court once more entered Rule 11 sanctions against the
Debtor supported by findings of facts and conclusions of law.[19]

---

[14] *Id*. at 102 (Ex. 5).

[15] *Id*. at 50 (Ex.1).

[16] *Id*. at 57 (Ex.1).

[17] *Id*. at 84 (Ex.1).

[18] *Id*. at 88 (Ex. 2).

[19] *Id*.

10.     In February 2015, the State Court fixed the amount of the Rule 11 sanctions at $27,981.07,[20] and then entered this amount as a judgment on July 2, 2015 with interest at 2.27% from March 11, 2015.[21]

11.     In November 2015, the State Court denied the Debtor's Rule 60(b) motion as to the December 2014 sanctions, and the Debtor appealed to the Utah Court of Appeals (Appeal No. 20151055-CA).[22]

12.     In June 2016, the State Court entered an order denying Barnett's many motions challenging the September 2008 ruling regarding ownership of the GFS bank account, along with other subsequent rulings of the State Court. Barnett, represented by the Debtor, appealed to the Utah Court of Appeals (Appeal No. 20160652-CA).[23]

**C. Rulings by the Utah Court of Appeals and Its Award of Sanctions Against the Debtor.**

13.     On September 20, 2018, the Utah Court of Appeals issued its decisions on the two appeals. The decisions affirmed the State Court's rulings in all respects.[24]

14.     In connection with both appeals, Ross sought damages against the Debtor under Utah R. App. P. 33 based on allegations that the appeals were frivolous and filed for purposes of delay. The Utah Court of Appeals agreed and ruled that because the abusive litigation strategy was attributable to the Debtor, he should pay the Rule 33 damages.[25] The Court of Appeals then

---

[20] *Id.* at 94 (Ex. 3).

[21] *Id.* at 98 (Ex. 4).

[22] *Id.* at 123 (Ex. 6).

[23] *Id.* at 106-07 (Ex. 6).

[24] *Id.* at 100 (Ex. 5) and 121 (Ex. 7). The published decisions are found at *Ross v. Barnett*, 436 P.3d 306 (Utah Ct. App. 2018) and *Ross v. Short*, 436 P.3d 318 (Utah Ct. App. 2018).

[25] *Id.* at 118 (Ex. 5) and 131 (Ex. 6).

remanded to the State Court to determine the amount of Rule 33 damages based on Ross' costs and attorney's fees in defending the appeals.[26]

15.     In February 2019, the Utah Supreme Court denied the Debtor's petitions for writs of certiorari as to both appeals.[27]

16.     On remand to the State Court, the Debtor continued to challenge jurisdiction and to contest matters decided by the Utah Court of Appeals. In April 2019, the State Court made its findings denying the Debtor's motions and calculating the Rule 33 damage amounts against the Debtor.[28]

17.     In May 2019, the State Court entered its judgment on the Rule 33 damages.[29] As to the first appeal (*Ross v. Short*), the State Court awarded Ross costs of $260.80 and attorney fees of $14,770. In the second appeal (*Ross v. Barnett*), the State Court awarded Ross costs of $134.54 and attorney fees of $13,492.50. Thus, the total amount of Rule 33 damages awarded against the Debtor was $28,657.84, with such amount to accrue interest at 4.75%, from May 31, 2019.[30]

**D.  The Vexatious Litigant Order and the Resulting Appeal.**

18.     Based on the Debtor's conduct in connection with the appeals and the remand for Rule 33 damages, Ross brought a motion to have the Debtor designated as a "vexatious litigant."

19.     On July 12, 2019, the State Court entered its decision finding the Debtor to be a vexatious litigant under Utah R. Civ. P. 83.[31]

---

[26] *Id.*

[27] ECF No. 43 at 284 (Ex. 24) and 288 (Ex. 25).

[28] *Id.* at 140 (Ex. 9).

[29] *Id.* at 149 (Ex. 10).

[30] *Id.* at 150 (Ex. 10).

[31] *Id.* at 152 (Ex. 11).

20.     On July 16, 2019, Ross filed a motion for its costs and fees in prosecuting the vexatious litigant motion.[32]

21.     On October 8, 2019, the State Court once more sanctioned the Debtor based on its inherent powers to impose sanctions for attorney misconduct, including the Debtor's improper and frivolous filings.[33]

22.     On November 27, 2019, the State Court entered its order fixing the sanction amount at $39,535.00, with such amount to accrue interest at 2% above the federal post-judgment interest rate beginning 14 days from the date of the order.[34]

23.     The Debtor appealed the April 2019 order denying his motions to reconsider, the May 2019 award of Rule 33 sanctions, and the July 2019 vexatious litigant order (appeals consolidated under No. 20190580-CA).[35]

24.     On September 26, 2019, and on its *sua sponte* motion for summary disposition, the Utah Court of Appeals affirmed the State Court rulings in all respects. In addition, the Utah Court of Appeals yet again awarded damages against the Debtor under Utah R. Civ. P. 33.[36] The Debtor did not file a petition for certiorari from this decision.

25.     In November 2019, Ross filed a declaration of fees and costs for damages under Rule 33, consistent with the remand by the Utah Court of Appeals.[37] The Debtor failed to timely

---

[32] *Id*. at 168 (Ex. 12).

[33] *Id*.

[34] *Id*. at 173 (Ex. 13).

[35] *Id*. at 177 (Ex. 14).

[36] *Id*. (this decision was not published in a reporter).

[37] *Id*. at 182 (Ex. 15).

object to the declaration, but later he made a request to file a late objection. The State Court denied

the request on December 19, 2019.[38]

26.     Before the State Court could enter its ruling on the Rule 33 sanctions from the third

appeal, the Debtor filed for bankruptcy on December 31, 2019 that stayed the entry of the

judgment.

27.     In *Ross v. GFS*, the Debtor filed a total of nine appeals to the Utah Court of

Appeals.[39] Of these nine appeals, six "were dismissed for lack of jurisdiction or because the Debtor

failed to perfect the appeals."[40] In the other three appeals, the Utah Court of Appeals affirmed the

State Court's rulings *in toto*.[41]

### E.  The Debtor's *Short v. Bogart* Complaint.

28.     In July 2019, the Debtor, as plaintiff, filed a complaint in the State Court against

defendants John Bogart, Telos Ventures Group PLLC, Yan Ross, Randi Wagner, and Judge Keith

Kelly ("*Short v. Bogart*").[42] The Debtor amended his complaint in August 2019.[43]

29.     The amended *Short v. Bogart* complaint asserted 15 causes of action, including: (1)

a request for judicial declarations that the State Court and the Utah Court of Appeals erred in

upholding the September 2008 ruling; (2) seeking corrections for the defendants' fraud and deceit

on the State Courts; (3) rectifying misconduct by Judge Kelly; and (4) looking to essentially undo

all prior adverse rulings against the Debtor and Barnett.[44]

---

[38] *Id*.

[39] *Ross et al. v. Short*, 20190580-CA, (Utah Ct. App. Sept. 26, 2019) (summarizing the Debtor's appellate history). See copy of opinion at ECF No. 43 at 177 (Ex. 14).

[40] *Id*.

[41] ECF No. 43 at Ex. 5, Ex. 6, and Ex. 14.

[42] ECF No. 43 at 190 (Ex. 16).

[43] *Id*. at 216 (Ex. 17).

[44] *Id*.

30.     On September 3, 2019, the State Court entered its order striking the *Short v. Bogart* complaints as containing redundant, immaterial, impertinent, or scandalous matter under Utah R. Civ. P. 10(h).[45] The order gave the Debtor ten days to file an appropriate, amended complaint or the *Short v. Bogart* case would be deemed closed.[46]

31.     The Debtor did not file an amended complaint, and on September 16, 2019, the *Short v. Bogart* defendants filed a motion for sanctions against the Debtor under Utah Code Ann. § 78B-5-825(1).[47]

32.     In November 2019, the State Court entered its findings that the Debtor's actions justified an award of sanctions.[48]

33.     On December 27, 2019, the State Court entered its amended ruling fixing the sanction amount against the Debtor at $16,195.50 with interest at 4.75% accruing from December 25, 2019.[49]

34.     However, before the State Court could enter a separate judgment in this amount, the Debtor filed for bankruptcy on December 31, 2019 that stayed the entry of the judgment.

**F.  Proceedings in the Bankruptcy Court.**

35.     After the Debtor filed for bankruptcy, Plaintiffs sought relief from the automatic stay. On April 30, 2020, the bankruptcy court modified the stay to allow the State Court to enter judgments as to the sanction amounts based on the State Court's pre-bankruptcy determination.[50]

---

[45] *Id*. at 253 (Ex. 18).

[46] *Id.* at 255 (Ex.18).

[47] *Id*. at 258 (Ex. 19).

[48] *Id*.

[49] *Id*. at 275 (Ex. 22)

[50] ECF No. 51 in Bankruptcy Case No. 19-29471.

However, any collection of such judgment was stayed pending further order of the bankruptcy court.

36.    In May 2020, the State Court entered its judgment against the Debtor in the amount of $16,196.50[51], as set forth in the December 2019 ruling in *Short v. Bogart*.[52]

37.    On July 1, 2020, the State Court awarded Ross $10,920.00 sanctions with interest to accrue at 2% above the federal post-judgment interest rate beginning 14 days from the entry of the order.[53] This was pursuant to the Rule 33 sanctions awarded by the Utah Court of Appeals in the third appeal in *Ross v. GFS*. The Debtor did not appeal this July 2020 order.

38.    The total amount of sanctions awarded by the State Court against the Debtor and in favor of the various Plaintiffs is $123,290.41, excluding accrued interest.

39.    After the Debtor's bankruptcy filing, Plaintiffs timely filed a complaint under 11 U.S.C. § 523(a)(6) seeking to have their sanction amounts determined to be nondischargeable as a willful and malicious injury.[54]

40.    The Debtor responded by filing a counterclaim asserting twenty-three separate causes of action (the "Counterclaims").[55]

41.    The Counterclaims essentially allege that all of the rulings against the Debtor by the State Courts should be revisited by this Court and declared void, invalid, or otherwise revised in the Debtor's favor.

---

[51] The sanction amount in the December 27, 2019 "Ruling on Defendant's Request for Attorney Fees" was set at $16,195.50, but the amount set in the May 18, 2020 "Judgment" was a dollar more at $16,196.50.

[52] ECF No. 43 at 280 (Ex. 23).

[53] ECF No. 43 at 182 (Ex. 15).

[54] ECF No. 1.

[55] ECF No. 27.

42.    On August 12, 2020, Plaintiffs filed a motion to dismiss the Debtor's Counterclaims

based on the *Rooker-Feldman* Doctrine, failure to state a claim, lack of standing, claim preclusion,

and judicial privilege.[56]

43.    On October 30, 2020, the Court issued a memorandum decision[57] and order[58],

granting the Plaintiffs' motion to dismiss the Debtor's twenty-three Counterclaims.[59]

44.    On November 9, 2020, the Plaintiffs filed their motion for summary judgment.[60]

45.    On November 30, 2020, the Debtor filed his opposition to the motion for summary

judgment.[61] On December 2, 2020, the Plaintiffs filed their reply in support of the motion.[62]

46.    The Court held an evidentiary hearing on the Motion on December 8, 2020. David

Billings, and John Bogart appeared on behalf of the Plaintiffs. The Debtor appeared on his own

behalf. Following the hearing, the Court took the matter under advisement, but allowed the Debtor

to file a sur-reply in opposition to the motion for summary judgment. The Debtor filed his sur-

reply on December 22, 2020,[63] and the Court has considered it in making its ruling.

---

[56] ECF No. 28.

[57] ECF No. 39.

[58] ECF No. 40.

[59] Debtor's Counterclaim No. 22 sought a declaratory judgment that res judicata did not apply in this case. The Court found no reason to treat Counterclaim No. 22 as seeking affirmative relief; rather, the Court rather held that it would be treated as one of the Debtor's defenses to Plaintiffs' complaint. Thus, while the Court dismissed Counterclaim No. 22, it has considered and rejected the Debtor's challenge to res judicata in ruling on Plaintiffs' motion for summary judgment.

[60] ECF No. 43.

[61] ECF No. 47.

[62] ECF No. 49.

[63] ECF No. 51.

## IV.    DISCUSSION

### A. Introduction.

Over the eight years prior to the Debtor's bankruptcy filing, the Utah State Court and the Utah Court of Appeals (collectively the "State Courts") issued multiple sanction awards against the Debtor. These awards included findings that the Debtor had engaged in improper, inappropriate, bad faith, harassing, frivolous, intimidating, threatening, strong-arming, bullying, abusive, obstructive, and vexatious litigation conduct. Further, the State Courts held that these actions were taken with an intent to hinder, delay or defraud others; prevent resolution of issues; increase Plaintiffs' costs and fees; unnecessarily delay the case; take unconscionable advantage of Plaintiffs; obtain a benefit to which the Debtor had no legitimate claim; and to frustrate justice.[64] Plaintiffs' summary judgment motion asks this Court to apply the preclusive effect of the State Court Rulings to find that the Debtor's sanctionable conduct constituted a willful and malicious injury under § 523(a)(6) that would except the sanction awards from discharge.

If the findings of the State Courts Rulings are res judicata and sufficiently specific, sanctions for bad faith litigation conduct can constitute a willful and malicious injury under § 523(a)(6).[65] Thus, the two core issues in deciding Plaintiffs' summary judgment motion are: (1) does res judicata apply; and (2) if so, are the rulings of the State Courts sufficient to support a finding of willful and malicious injury under § 523(a)(6)?

---

[64] As identified below, these specific terms and findings are contained in the various State Court Rulings regarding the Debtor's conduct.

[65] *See O'Melveny & Myers v. Hopkins (In re Hopkins)*, No. 99-1080, 1999 U.S. App. LEXIS 33583, 1999 WL 1243253 (10th Cir. Dec. 22, 1999) (holding that a prior court's award of sanctions against an attorney for engaging in bad faith litigation tactics in representing a vexatious litigant were nondischargeable under § 523(a)(6)) and *Hughes v. Arnold (In re Hughes)*, 347 F. App'x 359, 361 (9th Cir. 2009) (bankruptcy court appropriately granted summary judgment under § 523(a)(6) based on preclusive effect of state court sanction "because the issue of [the attorney's] willfulness and maliciousness was squarely before the court when it determined whether [the attorney's] conduct was unreasonable, frivolous, meritless, or in bad faith.").

### B. Summary Judgment Standard.

Under Fed. R. Civ. P. 56(a), as incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[66] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[67] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[68]

The moving party bears the burden to show that it is entitled to summary judgment,[69] including the burden to properly support its summary judgment motion as required by Rule 56(c).[70] If the moving party has failed to meet its burden, "summary judgment must be denied," and the nonmoving party need not respond because "no defense to an insufficient showing is required."[71] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[72] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[73]

---

[66] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[67] *Id*.

[68] *Id.* at 249.

[69] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[70] *Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).

[71] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (citation omitted).

[72] *Concrete Works of Colorado, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

[73] *Celotex*, 477 U.S. at 324.

When considering a motion for summary judgment, the Court views the record in the light most favorable to the non-moving party,[74] but the Court does not weigh the evidence or make credibility determinations.[75]

### C.  Res judicata – Issue & Claim Preclusion.

Plaintiffs' motion for summary judgment argues that the res judicata effect of the State Court Rulings conclusively establish that the Debtor's sanctionable conduct is a willful and malicious injury under § 523(a)(6). The term "res judicata" comprises the two distinct doctrines of preclusion:

> The first is issue preclusion (sometimes called collateral estoppel), which precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment. The second doctrine is claim preclusion (sometimes itself called res judicata). Unlike issue preclusion, claim preclusion prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated.[76]

In considering the preclusive effect of a state court finding, a federal court is to apply the res judicata standards of the issuing forum, in this case Utah, to ensure that the judgments carry the same effect in the federal court as they would in the state court.[77]

### 1.  Claim Preclusion.

Claim preclusion under Utah law involves a three-part test: (1) both cases must involve the same parties or their privies; (2) the claim to be barred must have either been presented – or one

---

[74] *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1279 (10th Cir. 2013) (citation omitted).

[75] *Nat'l Am. Ins. Co. v. Am. Re–Insurance Co.*, 358 F.3d 736, 742–43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

[76] *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (citations omitted).

[77] *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373 (1985) ("It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments.").

that could have been presented – in the prior proceeding; and (3) the prior proceeding must have resulted in a final judgment on the merits.[78]

Claim preclusion advances three important purposes: (1) in ensures finality and protects litigants from harassment by vexatious litigation; (2) it promotes judicial economy by preventing previously litigated claims from being relitigated; and (3) it preserves the integrity of the judicial system by preventing inconsistent judicial outcomes.[79]

As explained more fully below, the State Court Rulings and this adversary proceeding involve the same parties; the Debtor's defenses to the State Court Rulings were or could have been brought in the State Courts; and the proceedings in the State Courts resulted in rulings and judgments on the merits.

The Debtor's primary challenge to summary judgment is that the Utah State Court Rulings were all wrongly decided and should be disregarded or revised by this Court. To the extent the Debtor seeks to raise previously unasserted defenses to the Utah State Court Rulings, the Court finds that he is barred from doing so by claim preclusion.

### 2.  Issue Preclusion (Collateral Estoppel).

Under Utah law, issue preclusion requires the following four elements:

"(i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the

---

[78] *Mack v. Utah State Dep't of Com.*, 221 P.3d 194, 203 (Utah 2009) (citations omitted). *See also Oman v. Davis Sch. Dist.*, 194 P.3d 956, 966 (Utah 2008) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, *whether on the same or a different claim*.") (emphasis in original) (quoting Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982)).

[79] *Allen v. Moyer*, 259 P.3d 1049, 1051 (Utah 2011).

issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits."[80]

The policy purposes of issue preclusion include: "(1) preserving the integrity of the judicial system by preventing inconsistent judicial outcomes; (2) promoting judicial economy by preventing previously litigated issues from being relitigated; and (3) protecting litigants from harassment by vexatious litigation."[81]

Given the protracted history of the parties' disputes, coupled with the number of times the Debtor has unsuccessfully reasserted the same arguments to the State Courts (e.g., lack of finality, lack of jurisdiction, void *ab initio* orders, error, mistake, fraud, denial of due process, denial of access to open courts, etc.), the public policy arguments behind issue and claim preclusion have particular relevance in this case.[82] For the reasons set forth below, the Court finds that the Utah State Court Rulings are entitled to collateral estoppel effect.

### (a). All Applicable Proceedings Involve the Same Party.

The Debtor argues that issue preclusion is inapplicable because he was not a party in the *Ross v. GFS* litigation, but only Barnett's attorney.[83] This is an obfuscation of the facts. All motions for sanctions were filed against the Debtor; the State Courts ordered the Debtor to pay the sanctions; the Utah Court of Appeals rejected the Debtor's arguments that he was not a party in *Ross v. GFS* and that the State Court lacked jurisdiction over him;[84] and the Debtor was the

---

[80] *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 965 (Utah 2008).

[81] *Buckner v. Kennard*, 99 P.3d 842, 847 (Utah 2004).

[82] See *Kirkland v. Barnes (In re Kirkland)*, No. AZ-08-1143-EMoMk, 2008 Bankr. LEXIS 4704, at *33, 2008 WL 8444824, at *10-11 (B.A.P. 9th Cir. Nov. 26, 2008) ("Certainly, conduct that is dilatory, obstructive, evasive or contemptuous of the court and the judicial process supports use of preclusion . . . .").

[83] ECF No. 47 at 35.

[84] ECF No. 43 at 130 (Ex.6) ("[W]e reject Short's argument that the district court lacked subject matter jurisdiction to enter a judgment against him because he is not a 'party' to the case.")

plaintiff in the *Short v. Bogart* litigation. For these reasons, the Court finds that the Debtor was the party in each of the State Court Rulings awarding sanctions against him.

### (b). The Issues in the Prior Litigation are Identical to the Issues in This Litigation.

The Utah State Court Rulings are extensive and specific both as to findings of fact and conclusions of law regarding the many ways in which the Debtor's conduct was so wrongful as to merit serious sanctions. The Debtor argues that the issues for awarding sanctions are not identical to the § 523(a)(6) issues of willful and malicious injury.[85] However, for purposes of issue preclusion, the causes of action need not be identical, but only the factual issues:

> The applicability of issue preclusion does not depend on whether the claims for relief are the same. What is critical is whether the issue that was actually litigated in the first suit was essential to resolution of that suit and is the same factual issue as that raised in the second suit.[86]

The State Courts found the Debtor to have engaged in wrongful conduct, including findings that his conduct was harassing,[87] threatening,[88] bullying,[89] abusive,[90] vexatious,[91] and strong-

---

[85] ECF No. 47 at 24 ("[B]y not actually addressing individual filings [by the Debtor in the State Courts], Plaintiffs fail to demonstrate how any adjudication regarding any given filing in fact addressed the identical issues now before this Court.").

[86] *Fowler v. Teynor*, 323 P.3d 594, 597 (Utah Ct. App. 2014) (citations omitted, and quote simplified).

[87] "Words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation." *Harassment*, Black's Law Dictionary (11th ed. 2019).

[88] "A communicated intent to inflict harm or loss on another or on another's property . . . ." *Threat*, Black's Law Dictionary (11th ed. 2019).

[89] "A cruel person who uses physical strength or verbal intimidation, usu. involving insults, to frighten or hurt someone . . . ." *Bully*, Black's Law Dictionary (11th ed. 2019).

[90] "Tactics in litigation or negotiation intended to vex, harass, or intimidate an adverse party, to drive up that party's costs, or to delay the proceedings rather than conclude a matter by agreement or adjudication." *Abusive Tactics*, Black's Law Dictionary (11th ed. 2019).

[91] "(Of conduct) without reasonable or probable cause or excuse; harassing; annoying." *Vexatious*, Black's Law Dictionary (11th ed. 2019).

arming.[92] Such conduct involves a perpetrator's actions and intent to cause injury or to otherwise

engage in wrongful conduct without just cause or excuse. Thus, these findings involve the identical

factual issues that are dispositive of a willful and malicious injury under § 523(a)(6).

### *(c).  The Issues Were Completely, Fully, And Fairly Litigated.*

The Debtor asserts that there are no uncontested, admissible facts establishing that the State

Court Rulings were completely, fully, and fairly litigated. He asserts that the Plaintiffs must

produce, and this Court must review, each of the hundreds of papers the Debtor filed in the State

Courts to determine if each such paper was filed with a malicious intent to injure.[93] This is an

obfuscation of the proper analysis. The State Courts have already reviewed the Debtor's papers

and ruled that their filing constituted such wrongful conduct as to justify the imposition of

significant sanctions. These rulings were affirmed on appeal and are final. It is contrary to the

purposes of res judicata to suggest that this Court must "grind the same corn a second time" – the

multiple grinds by the State Courts are sufficient.[94]

The Debtor further argues that the bankruptcy court "cannot merely assume or speculate

that simply because there are rulings in state court that those rulings were 'competently, fully and

fairly' litigated, especially when [the Debtor] has made numerous factual allegations in his answer

---

[92] "To use violence or bullying tactics against (a person); to coerce or bully into doing something." *Strong-Arm*, Oxford English Dictionary (3rd Ed. 2015).

[93] ECF No. 47 at 24-25 and ECF No. 51 at 10 ("For the Court to hold that each and every one of Short's filings lacked factual and legal support without actually reviewing those filings would amount to pure speculation by the Court. And since Plaintiffs have failed to introduce any of those filings into the record, this Court cannot make that assumption without personally denying Short his constitutional right to due process.").

[94] *Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970).

as to how they were not . . . ."[95] In essence, the Debtor argues that each ruling against him was due to the incompetence, confusion, error, and/or unfairness of the State Courts.[96]

The Debtor's argument is only another attempt to avoid the consequences of the final State Court Rulings. Under Utah law, "[a]n issue is completely, fully, and fairly litigated when it is properly raised, submitted for determination, and actually determined."[97] Each of the State Court Rulings were based on properly filed motions that were exhaustively contested by the Debtor (or the Debtor had a full opportunity to contest them), and then the motions were specifically ruled on by the State Courts. The Debtor's assertions of factual and legal infirmities in the State Court Rulings were thrice rejected on appeal. The Debtor cannot use this Court and this adversary proceeding to re-litigate the propriety of the State Court Rulings. The Court therefore finds that all of the State Court Rulings were competently, fully, and fairly litigated for purposes of collateral estoppel.

### (d).  The State Court Rulings are Final Judgments on the Merits.

To have preclusive effect, the State Court Rulings must be final and on the merits. The Debtor asserts the State Court Rulings are not final for the following reasons:

1.     The State Court Rulings are interlocutory because they do not adjudicate all of the claims, rights, and liabilities of the parties under Utah Rule Civ. Pro. 54(a).

---

[95] *Id*. at 33.

[96] As argued by the Debtor: "The opinion of the judges, (many of whom were unconstitutionally conflicted), as set forth in their various sanction orders, are not the material facts Plaintiffs must prove at trial under Section 523(6). They are simply those judge's conclusions as spectators." ECF No. 51 at 7.

[97] *Ostler v. Ret. Bd.*, 400 P.3d 1099, 1106 (Utah Ct. App. 2017).

2.      Because the Debtor was the attorney and not a party in *Ross v. GFS*, there was not a cause of action against him; thus, there was not, and could not be, a final judgment against him.

3.      Likewise, because the Debtor was not a party in *Ross v. GFS*, the court never had jurisdiction over him; thus, any judgments against him in that case are null and void.

The Debtor has raised these same arguments multiple times in the State Courts, and each time they have been rejected. Their express rejection on appeal is dispositive of their finality.[98] The Court likewise rejects these arguments that the State Court Rulings are not final. Under Utah law, "a final judgment for issue preclusion purposes need not come after a full trial, nor must it dispose of the case."[99] Indeed, a final judgment for purposes of issue preclusion "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect."[100]

While the Court addressed the finality of the State Court Rulings in granting the Plaintiffs' motion to dismiss the Debtor's counterclaims under the *Rooker-Feldman* Doctrine, the analysis is similar and merits repeating.

---

[98] *Jordan Constr., Inc. v. Fed. Nat'l Mortg. Corp.*, 408 P.3d 296, 307 (Utah 2017) ("There is simply no support for the premise that 'final judgment' means something different for *res judicata* purposes than its well-established meaning for purposes of an appeal.").

[99] *Parkinson v. Sanderson*, No. 2:15-cv-00796-JNP-EJF, 2019 U.S. Dist. LEXIS 169479, at *8, 2019 WL 4746507, at *3 (D. Utah Sep. 30, 2019).

[100] Restatement (Second) of Judgments § 13 (Am. L. Inst. 1982).

    *i.*    *The 2008 Ruling Regarding Ownership of the GFS Bank Account, and All Subsequent Rulings Related Thereto, are Final.*

In September 2008, the State Court rejected Barnett's claim to the GFS bank account. In 2009, the Debtor appeared as counsel for Barnett and began a lengthy series of challenges to this ruling. The challenges continued for eight years before the State Court issued its order in June 2016, denying all of the Debtor's motions to reconsider or amend its rulings.

The Debtor appealed the June 2016 order and asserted fourteen issues of error "relating to myriad rulings made throughout the protracted history of this case."[101] However, the Utah Court of Appeals held that only the June 2016 order fell within the 30-day appeal period; thus, all prior orders were final, and non-appealable.[102] Therefore, the Utah Court of Appeals held that it could only address three issues, one of which was whether the State Court had subject matter jurisdiction to "adjudicate ownership disputes involving non-parties" such as intervenor Barnett.[103]

The Utah Court of Appeals affirmed the State Court orders in all respects, and specifically held that the State Court had subject matter jurisdiction to rule on Barnett's claim to the GFS bank account.[104] The Utah Supreme Court subsequently denied the Debtor's petition for certiorari.[105] Thus, the Court finds that all State Court orders, judgments and decisions leading up to and including the June 2016 Order, along with all other orders, judgments and decisions inextricably intertwined therewith, are final for purposes of res judicata.

---

[101] ECF No. 43 at 107 (Ex. 5).

[102] *Id*. at 109-110 (Ex.5).

[103] *Id*. at 112 (Ex.5).

[104] *Id.* at 114 (Ex.5).

[105] *Id*. at 288 (Ex. 25).

> ii.    *The 2014 Sanction Order was Affirmed by the Utah Court of Appeals and It is Final.*

In December 2014, Ross sought and obtained Rule 11 sanctions against the Debtor. After denying the Debtor's three motions to vacate, the Debtor appealed raising three issues: (1) the State Court should have vacated the sanction judgment because it and the underlying rulings were not final and were procured through fraud and mistake; (2) the State Court lacked subject matter jurisdiction to impose sanctions; and (3) the State Court improperly refused to reconsider its prior decisions.[106]

The Utah Court of Appeals found that the sanction orders were final[107] and had not been fraudulently obtained.[108] It also ruled that the Debtor's "contention that a court lacks jurisdiction to enter a judgment of sanctions against an attorney is baseless."[109]

The Utah Supreme Court likewise denied the Debtor's petition for certiorari. Thus, the Court finds that the 2014 sanctions against the Debtor, along with all other orders, judgments and decisions inextricably intertwined therewith, are final for purposes of res judicata.

> iii.    *The Vexatious Litigant Order and the Damage Awards Under Utah R. App. P. 33 are Final.*

The Utah Court of Appeals found the Debtor's first two appeals to be frivolous and filed for purposes of delay, and thus awarded Ross damages under Utah R. App. P. 33 in an amount to be determined by the State Court on remand. The Debtor again challenged all of these prior rulings,

---

[106] *Id.* at 123 (Ex. 6).

[107] *Id.* at 126 (Ex. 6) ("Not only is [Short's] argument unsupported, it runs contrary to the doctrine of merger of judgments. Under this doctrine, 'once final judgment is entered, all preceding interlocutory rulings that were steps towards final judgment merge into the final judgment and become appealable at that time.'") (citation omitted).

[108] *Id.* at 128 (Ex. 6).

[109] *Id.* at 130-31 (Ex.6).

but the State Court ultimately denied them.[110] On May 22, 2019, the State Court entered a Rule 33

money judgment against the Debtor for $28,657.84.[111]

Despite multiple judicial rejections of his arguments regarding finality, fraud, void *ab*

*initio*, and lack of jurisdiction, the Debtor continued to pursue these arguments. As a result, Ross

brought a motion under Utah R. Civ. P. 83 for a ruling that the Debtor was a "vexatious litigant."

In July of 2019, the State Court found "that the conditions of Rule 83(a)(1) & (c) have been

satisfied by clear and convincing evidence, and as a result, finds that Douglas Short is a vexatious

litigant."[112]

The Debtor appealed both the Rule 33 sanctions and the vexatious litigant order. On

summary disposition, the Utah Court of Appeals affirmed these orders based on the following: (1)

the Debtor's ongoing "challenges to jurisdiction have been definitively resolved"; (2) "this court's

opinion confirming jurisdiction over Short and Barnett constituted the law of the case, which the

[lower] court was not at liberty to reconsider"; and (3) "this court declines to revisit Short's other

issues that have been conclusively resolved."[113] The Debtor did not appeal this decision of the

Utah Court of Appeals. The Court thus finds that the Rule 33 sanctions, the vexatious litigant

order, and the rulings in the Debtor's third appeal, along with all other orders, judgments and

decisions inextricably intertwined therewith, are final.

Therefore, the Court concludes that all of the State Court Rulings attached as exhibits to

Plaintiffs' motion for summary judgment are final for purposes of claim preclusion and issue

---

[110] *Id*. at 140 (Ex.9).

[111] *Id*. at 149 (Ex. 10).

[112] *Id*. at 152 (Ex.11).

[113] *Id.* at 178 (Ex. 14).

preclusion. The specific elements of issue preclusion will be addressed in the Court's review of each of the applicable State Court Rulings.

### D. Willful and Malicious Injury Under § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt arising from the "willful and malicious injury by the debtor to another entity or to the property of another entity." For Plaintiffs to prevail, they must establish by a preponderance of the evidence that the Debtor's actions resulted in a debt for an injury that involves both a willful act and a subjectively malicious injury.[114] A debtor's malicious intent can be established by "direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur."[115] Such knowledge can be inferred from the debtor's experience in the area that gave rise to the injury.[116]

### 1. Plaintiffs Hold Allowed Bankruptcy Claims for the Sanction Amounts.

An essential element for a § 523(a)(6) action is a debt arising from an injury. The Debtor argues there are no debts because Plaintiffs have not established that the sanction awards are for a particularized injury.[117] Further, he argues there are no undisputed facts that Plaintiffs made any

---

[114] *Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004)* (holding that without proof of both a willful act and a malicious injury, an action under § 523(a)(6) must fail.). *See also Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart), No. 99-3339, 2000 U.S. App. LEXIS 22754, at \*7, 2000 WL 1275614, at \*3 (10th Cir. Sept. 8, 2000)* (ruling that a § 523(a)(6) action "turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur.").

[115] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (B.A.P. 10th Cir. 2020) (citing *In re Longley*, 235 B.R. 651, 657 (BAP 10th Cir. 1999)).

[116] *CIT Fin. Servs., Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir. 1989).

[117] ECF No. 47 at 2-9 and ECF No. 51 at 8-9.

payment or had a contractual obligation to pay for their attorney's fees and costs that are the basis for the sanction amounts.[118] Under bankruptcy law, this argument is without merit.

The plain language of § 101(5) of Bankruptcy Code states that a "'claim' means a right to payment . . . ." and § 101(12) defines a "debt" as "liability on a claim." It is beyond cavil that the State Court Rulings created in Plaintiffs a right to payment from the Debtor and created in the Debtor a liability to pay such claims to Plaintiffs. Thus, it is irrelevant whether Plaintiffs actually paid their attorneys their costs and fees. What is relevant is that the State Courts ordered the Debtor to pay Plaintiffs the sanction amounts. Thus, on the bankruptcy petition date, the Plaintiffs held allowable claims against the Debtor for the sanction awards intended to compensate them for their injuries in responding to the Debtor's sanctionable conduct. Therefore, the Court finds that the sanction awards created claims against the Debtor and in favor of the various Plaintiffs that satisfy the debt requirement for a § 523(a)(6) cause of action.

Short further argues that his failure to pay the sanctions cannot be a willful and malicious injury since it would result in every unpaid debt in bankruptcy being nondischargeable. This misstates the matter before the Court. It is not the Debtor's failure to pay the sanctions that is at issue, but whether his conduct in the State Courts resulted in willful and malicious injuries to the Plaintiffs.

### 2. Willful Injury

Plaintiffs assert under the doctrine of collateral estoppel that the State Court Rulings establish that the Debtor's sanctionable actions constitute a willful and malicious injury under §

---

[118] As argued by the Debtor: "In sum, since any holding that the Plaintiffs have in fact been injured by Short's willful acts causing them to actually incur attorney fees in the amounts of the sanctions ordered would be based on pure speculation by this Court, since there is absolutely no such evidence in the record before it." ECF No. 51 at 9.

523(a)(6). In the Tenth Circuit, a § 523(a)(6) malicious injury "pertains to 'only acts done with the actual intent to cause injury,' and 'non-dischargeability takes a deliberate or intentional injury not merely . . . a deliberate or intentional act that leads to injury.'"[119] In other words "to constitute a willful act under § 523(a)(6), the debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it."[120]

As set forth more specifically below, the Court finds that the Debtor's actions in filing an excess of meritless pleadings with turgid repetitions of rejected arguments constitute a deliberate and intentional act taken with the subjective intent to cause Plaintiffs injury in the form of increased costs in defending against such pleadings, or with the knowledge that his actions would cause such an injury.

### 3. Malicious Injury

There is some debate in the Tenth Circuit regarding the definition of malicious injury. In *Panalis,* the Tenth Circuit held that "the term 'malicious' requires proof 'that the debtor either intend[ed] the resulting injury or intentionally [took] action that [was] substantially certain to cause injury.'"[121] However, the Tenth Circuit Bankruptcy Appellate Panel recently held that the language from *Panalis* was *dicta*[122] and applied a modified standard of what constitutes a malicious injury:

> For an injury to be "malicious," "evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' in addition to 'willfulness' is present." [A]ll the surrounding circumstances, including any justification or excuse offered by the debtor, are

---

[119] *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1128 (10th Cir. 2004) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).

[120] *Id.* at 1129.

[121] *Id.* (quoting *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995)).

[122] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 918-19 (B.A.P. 10th Cir. 2020).

relevant to determine whether the debtor acted with a culpable state of mind vis-à-vis the actual injury caused the creditor.

. . .

[T]he malicious element [requires] an act taken in conscious disregard of one's duties and without just cause or excuse, even in the absence of personal hatred, spite or ill-will, or wrongful and without just cause or excuse.[123]

The Court perceives *Smith* to create a possible conflict with *Panalis* as to the malicious injury standard. However, the Court finds under either standard that the Debtor's conduct resulted in a willful and malicious injury under § 523(a)(6). As explained more fully below, an application of the *Panalis* definition establishes both directly and indirectly that the Debtor's litigation conduct was taken with the subjective intent of harming Plaintiffs. This is established by his filing a plethora of court papers over a ten-year period with meritless, frivolous, and previously rejected arguments that required Plaintiffs to incur litigation costs and fees that now exceed $123,000. In the alternative, as an experienced attorney, the Debtor subjectively knew that his actions would cause injury to Plaintiffs through increased costs and attorney fees.

Applying the *Smith* view of malicious injury, the Court has considered the totality of the circumstances and finds that the State Court Rulings preclusively establish that the Debtor's conduct was wrongful, and, even in the absence of personal hatred, spite or ill-will, it was taken in disregard of his duties as an attorney to not engage in abusive litigation conduct. Further, in light of the multiple admonitions by the State Courts to cease such wrongful conduct, the Debtor is without just cause or excuse.

---

[123] *Id*. at 919 (citations and quotations omitted).

### E. The State Court Rulings Support a Finding of Willful and Malicious Injury Under § 523(a)(6).

The State Courts sanctioned the Debtor multiple times based on the Debtor's abusive, harassing, frivolous, and bad faith litigation tactics. Other bankruptcy courts have found that similar sanctionable conduct was both preclusive and sufficient to deny the discharge of such debts under § 523(a)(6). For example, in *Douglas Cnty. Bd. of Comm'rs v. Quarterman (In re Quarterman)*,[124] the bankruptcy court granted summary judgment under § 523(a)(6) based in part on the state court's finding that the debtor brought a meritless lawsuit that "lacked substantial justification," or was "interposed for delay or harassment," and as "a deliberate act to make the plaintiff work" rather than a genuine attempt to redress a justiciable harm.[125]

As set forth more fully below, the State Court Rulings have collateral estoppel effect, and, except for the Rule 33 damages awarded in the third appeal, they establish that the Debtor caused willful and malicious injuries to Plaintiffs under § 523(a)(6). The Court will now apply its analysis on issue preclusion and willful and malicious injury to each of the sanction awards against the Debtor.

---

[124] *Douglas Cnty. Bd. of Comm'rs v. Quarterman (In re Quarterman),* No. 09-65818-MGD, 2010 Bankr. LEXIS 3812 at *17-18, 2010 WL 4642471 at *1 (Bankr. N.D. Ga. Aug. 23, 2010).

[125] *See also Roswell Holdings, LLC v. Peterson (In re Peterson),* No. 07-79473-JB, 2009 Bankr. LEXIS 513 at *2, 2009 WL 6498512 (Bankr. N.D. Ga. Feb. 10, 2009) (summary judgment granted under § 523(a)(6) based on sanctions against the debtor who "willfully filed the action in superior court without substantial justification, to delay an inevitable and legal dispossessory proceeding, and with the intent to harass the plaintiff."); *French, Kezelis & Kominiarek, P.C. v. Carlson (In re Carlson),* 224 B.R. 659 (Bankr. N.D. Ill. 1998) (summary judgment granted under § 523(a)(6) based on state court findings that debtor filed unwarranted and meritless lawsuit with the purpose to "harass or in some way get even with" the opposing law firm.); *W. Rsrv. Area Agency on Aging v. Mitchell (In re Mitchell),* 13-14494, 13-1222, 2014 Bankr. LEXIS 4792 at *18, 2014 WL 6633033 at *7 (Bankr. N.D. Ohio Nov. 21, 2014) (summary judgment granted based on state court finding that debtor engaged in abusive litigation tactics without just cause or excuse); and *In re Chaires*, 249 B.R. 101, 106 (Bankr. D. Md. 2000) (summary judgment granted against attorney because intent to harm was inherent in pursuing state court lawsuit in bad faith and without justification). *But see Ford v. Landon (In re Landon),* 619 B.R. 727 (Bankr. N.D. Okla. 2020) (summary judgment denied when state court sanction order did not include specific findings of the debtor's subjective intent to injure under § 523(a)(6)).

1.  **The State Court's Rulings in Its February 10, 2012 Order Awarding Rule 11 Sanctions Against the Debtor Support a Finding of Willful and Malicious Injury Under § 523(a)(6).**

The Debtor's pathway to the collection of sanctions against him began with State Court ruling in September 2008 holding that a bank account was an asset of GFS that was subject to Ross' writ of attachment, and that Barnett's claim of ownership to the bank account was not credible (the "September 2008 Ruling"). Barnett hotly disputed this ruling.

In January 2009, the Debtor entered his appearance as counsel for Barnett and commenced filing motions to quash Ross' writ of execution and challenging the September 2008 Ruling. The Debtor was unsuccessful in his efforts to undue the September 2008 Ruling, and for the next few years he continued to engage in inappropriate litigation tactics (including a motion to disqualify the judge), and the filing of motions contesting previously decided issues.[126] Based on the Debtor's conduct, Ross brought a motion for Rule 11 sanctions. In February 2012, the State Court entered its decision and order that sanctioned the Debtor under Rule 11, and required him to pay $9,600 to the State Court (the "2012 Sanction Order").

While the 2012 Sanction Order did not create a bankruptcy claim in the Plaintiffs, the Court finds that its rulings are evidence of the Debtor's malicious and wrongful intent towards Plaintiffs. In awarding Rule 11 sanctions, the State Court summarized the Debtor's conduct:

> Mr. Short willfully engaged in a pattern of inappropriately attempting to re-litigate issues the Court had already determined, from the ownership of GSF's assets to the disqualification of Judge Kennedy. His persistence in doing this, notwithstanding the clear directives of Judges Kennedy, Maughn, and Barrett, has significantly prolonged this litigation and increased its expense. Even today, Mr. Short clings to

---

[126] A detailed recitation of the Debtor's litigation conduct is set forth in ECF No. 43 at 44-66 (Ex. 1).

the argument that his filings were well-founded in fact and in law, and he refuses to acknowledge the wrongful nature of the misconduct involved.[127]

As to the collateral estoppel of the 2012 Sanction Order, the Court finds as follows: (1) the Debtor was the party to the 2012 Sanction Order; (2) the issues and findings in the 2012 Sanction Order are identical to those that are relevant to this Court's determination whether the Debtor committed a willful and malicious injury under § 523(a)(6); (3) the 2012 Sanction Order was completely, fully, and fairly litigated; and (4) the 2012 Sanction Order resulted in a final judgment on the merits. These findings are thus entitled to collateral estoppel effect, and they directly and indirectly establish that from the beginning of this dispute, the Debtor's litigation misconduct was willful, inappropriate, and wrongful and done to prolong the litigation and increase its expense. Thus, the Court concludes that the findings in the 2012 Sanction Order are supporting evidence of the Debtor's wrongful and malicious intent under § 523(a)(6).

**2. The State Court's Rulings in Its December 2014 Order Awarding Rule 11 Sanctions Against the Debtor Support a Finding of Willful and Malicious Injury Under § 523(a)(6).**

Even after the 2012 Sanction Order, the Debtor persisted in his efforts to undo the September 2008 Ruling by filing 26 papers between June 2012 and October 2014.[128] This resulted in Ross filing motions for Rule 11 sanctions. On December 30, 2014, the State Court again awarded sanctions against the Debtor, but this time with the sanction amount to be paid to Ross (the "2014 Sanction Order").[129] After additional legal wrangling by the Debtor, the State Court

---

[127] ECF No. 43 at 82 (Ex. 1).

[128] *Id*. at Ex. 2.

[129] *Id*. at 88 (Ex. 2).

entered its final judgment on July 2, 2015 fixing the sanction at $27,981.07 with interest at 2.27%

from March 11, 2015.[130] In the 2014 Sanction Order, the State Court made the following findings:

> Through the subject motions, Mr. Short has engaged in a pattern of obstruction, delay, and bad faith filings. He continues to advance arguments that have been considered and rejected by the Court. He continues to attack the integrity and competence of the Court. He continues to attack the integrity and competence of opposing counsel. Mr. Short has sought to delay almost every motion filed by Plaintiff, and sought last minute continuances of the hearings on Plaintiff's motions. He rarely responds to Plaintiff's motions with an opposing memorandum as required by Rule 7. Instead, he routinely files a barrage of motions seeking to collaterally attack the underlying motion.[131]

> The subject motions were filed without legal or factual foundation and no reasonable lawyer would have filed them. They were filed for purposes of harassing Plaintiff and causing unnecessary delay. All of the filings lacked adequate grounding in the record of the case or applicable law. The result of Mr. Short's filings has been to delay this case needlessly and unnecessarily for more than a year.[132]

> Many of these motions were filed on the eve of hearings, or within only a few days of the scheduled hearing, making it burdensome for opposing counsel to respond. They were filed with the intent of preventing resolution of pending motions and detailing the scheduled hearing, and with the intent of increasing costs and fees, and unnecessarily delaying the case. All of the filings lacked adequate grounding in the record of the case or applicable law. The result of Mr. Short's filings has been to delay this case needlessly and unnecessarily for more than a year.[133]

> Previous sanctions against Mr. Short – both monetary and nonmonetary – have been ineffective at curbing Mr. Short's improper conduct.[134]

As explained more fully below, the Debtor appealed this ruling, but the Utah Court of

Appeals affirmed it in all respects. Therefore, the Court makes the following findings: (1) the

---

[130] *Id*. at 98 (Ex. 4).

[131] *Id*. at 89 (Ex. 2).

[132] *Id*. at 90 (Ex. 2).

[133] *Id*.

[134] *Id*.

Debtor was the party to the 2014 Sanction Order; (2) the issues and findings in the 2014 Sanction Order are identical to those that are relevant to this Court's determination whether the Debtor committed a willful and malicious injury under § 523(a)(6); (3) the 2014 Sanction Order was completely, fully, and fairly litigated; and (4) the 2014 Sanction Order resulted in a final judgment on the merits that was affirmed on appeal.[135] Thus, the Court concludes that the Debtor is collaterally estopped from contesting the findings in the 2014 Sanction Order.

The Court next holds that the following rulings from the 2014 Sanction Order, as cited above, are especially relevant as to whether the Debtor caused a willful and malicious injury: (1) the Debtor "engaged in a pattern of obstruction, delay, and bad faith filings;" (2) the Debtor filed papers for purposes of "harassing" Ross and "causing unnecessary delay;" (3) the Debtor filed papers without "legal or factual foundation" or "adequate grounding in the record of the case or application law;" and (4) the Debtor filed papers "with the intent of preventing a resolution" of pending motions and "with the intent of increasing costs and fees, and unnecessarily delaying the case."

Consequently, the Court finds that the Debtor's filing of 26 papers attempting to undo the September 2008 Ruling involved willful acts that were taken by the Debtor with the malicious and subjective intent to harm Ross in the form of increased costs and delay, and for which the Debtor had no legally cognizable justification or excuse. Further, these actions by the Debtor resulted in a particularized injury to Ross in the amount of $27,981.07 with interest at 2.27% from March 11, 2015. Thus, the Court grants Plaintiffs' motion for summary judgment by concluding as a matter of law that this debt is nondischargeable under § 523(a)(6).

---

[135] The Debtor also argues that the 2014 Sanction Order is not final. This is the same rejected argument the Debtor made in the First Appeal (*Id*. at 125-27 (Ex. 6)).

   **3.  The September 2018 Findings of the Utah Court of Appeals in Awarding
        Damages Against the Debtor under Utah R. App. P. 33, Along with the
        Subsequent Rulings by the State Court on Remand, Support a Finding of
        Willful and Malicious Injury Under § 523(a)(6).**

   In November 2015, the State Court denied the Debtor's Rule 60(b) motion as to the 2014

Sanction Order, and the Debtor timely appealed (the "First Appeal"). In June 2016, the State Court

denied the Debtor's motions to undue the September 2008 Ruling, and the Debtor again appealed

(the "Second Appeal"). The Utah Court of Appeals entered its rulings on both appeals on

September 20, 2018.[136]

   *(a).  The First Appeal and the Award of Sanctions by the Utah Court of
          Appeals Under Utah R. App. P. 33.*

   The First Appeal, with the Debtor as appellant, involved the State Court's 2014 Sanction

Order.[137] The Utah Court of Appeals affirmed the Rule 11 sanctions in all respects and made the

following findings: (1) the 2014 Sanction Order was a final order;[138] (2) there was no fraud or

mistake in the award of sanctions;[139] (3) the State Court appropriately declined to revisit its prior

orders because they were final and non-appealable due to the expiration of the appeal period;[140]

and (4) the State Court had jurisdiction over the Debtor to award sanctions.[141]

   In the First Appeal, Ross requested an award of costs and fees under Utah R. App. P. 33.

This rule provides that if an appeal "is either frivolous or for delay, it shall award just damages . .

. to the prevailing party," and that the "court may order that the damages be paid by the party or

---

[136] *Id*. at 100 (Ex. 5) and 121 (Ex. 6).

[137] *Id*. at 121 (Ex. 6).

[138] *Id*. at 126-27 (Ex. 6).

[139] *Id*. at 127-28 (Ex. 6).

[140] *Id*. at 128-29 (Ex. 6).

[141] *Id*. at 129-31 (Ex. 6).

by the party's attorney."[142] The rule then defines a frivolous appeal as "one that is not grounded

in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or

reverse existing law." Rule 33 next defines an appeal interposed for the purpose of delay as "one

interposed for any improper purpose such as to harass, cause needless increase in the cost of

litigation, or gain time that will benefit only the party filing the appeal . . . ."[143]

> The Utah Court of Appeals granted Ross' request for damages based on the following:

> We agree with Ross and Wagner that this appeal is not simply meritless but part of
> a "long-standing pattern of abusive and obstructive conduct." The never-ending and
> duplicative filings in this case, including the filing of seven separate appeals, appear
> designed to make this litigation prohibitively expensive. And we cannot escape the
> conclusion that this particular appeal is an effort by Short to gain time while he
> avoids paying the sanctions ordered by the district court.[144]

As expanded upon below, the State Court on remand entered a Rule 33 damage award

against the Debtor for $15,030.80.

### (b).  The Second Appeal and the Award of Sanctions by the Utah Court of Appeals Under Utah R. App. P. 33.

In July 2016, the Debtor filed the second appeal as to the September 2008 Ruling rejecting

Barnett's ownership claim to the GFS bank account (the "Second Appeal"). The Utah Court of

Appeals summarized the Debtor's litigation activities:

> During the ten years that followed [the September 2008 Ruling], Barnett and Short
> continually attacked those rulings. Among other things, Barnett denied intervening
> as a party in the case, challenged the court's jurisdiction, disputed the court's
> recollection of its September 2008 rulings, ignored the court's decisions by raising

---

[142] Utah R. App. P. 33(a).

[143] Utah R. App. P. 33(b).

[144] ECF No. 43 at 131 (Ex. 6).

the same rejected arguments over and over again, and filed several appeals that he failed to prosecute.[145]

The court then summarized the Debtor's many challenges to the September 2008 Ruling, but commented in a footnote:

> This condensed summary of the proceedings below does not do justice to the voluminous record in this case. Over the past ten years, Barnett has inundated the district court with repetitive filings, attempting to resurrect issues previously decided. In addition, Barnett has filed seven different appeals, most of which were dismissed based on his refusal to comply with this court's rules.[146]

The Utah Court of Appeals affirmed the State Court's rulings in all respects, including a finding that all State Court orders entered prior to June 21, 2016 (the commencement of the applicable appeal period) were final and non-appealable.[147]

Based on the Debtor's conduct, Ross again requested damages for its costs and fees under Utah R. App. P. 33. The Utah Court of Appeals granted the request based on the following:

> We conclude that this appeal is frivolous and interposed for the purpose of delay. Barnett has made no attempt to show how his notice of appeal was timely as to the majority of rulings challenged on appeal and has made no good-faith argument as to why we might exercise appellate jurisdiction over those issues. Moreover, the challenges to the 2016 Ruling distort the record and are yet another attempt to relitigate issues long since decided. The central issues in this case were decided in September 2008 when the district court found that the assets were the property of GFS, denied the motion to quash the writ of execution, and enjoined Barnett from dissipating the assets. The ten years of litigation since that time, including the present appeal, are a blatant attempt to delay enforcement of those rulings by repeatedly raising the same challenges and refusing to accept the court's rejection of those arguments.

---

[145] *Id*. at 101 (Ex. 5).

[146] *Id*. at nt. 1.

[147] *Id*. at 109-110 (Ex. 5).

. . . . Because we find that the abusive litigation strategy in this case is attributable to counsel, we order that the fees and costs be paid by Short.[148]

As set forth more fully below, the State Court on remand from the Second Appeal entered a Rule 33 damage award against the Debtor for $13,627.04.

### (c).  *After Remand, the State Court Denied the Debtor's Motions to Reconsider and Fixed the Amount of the Rule 33 Sanctions.*

On remand to determine the damage amounts under Rule 33, the Debtor continued to challenge all rulings in *Ross v. GFS*, including the Rule 33 sanction awards by the Utah Court of Appeals.[149] In its ruling on April 29, 2019, the State Court rejected the Debtor's reiteration of previously decided arguments:

> Mr. Short has raised arguments about jurisdiction and other matters. But the Court of Appeals has plainly ruled that this District Court has jurisdiction, and it gave the direct mandate to determine Plaintiffs' attorney fees on appeal. Those decisions are the law of this case. Mr. Short appears to be re-raising issues that appear to be authoritatively decided by the Utah Court of Appeals and that have been finally resolved in this case.[150]

The State Court further found:

> In the past few days, Short has filed additional motions, which attempt to re-raise issues previously argued and briefed before this Court. Those motions simply re-raise these repetitive arguments previously resolved by the Court. They lack merit, do not warrant further argument, and should be summarily denied.[151]

---

[148] *Id*. at 118 (Ex. 5).

[149] As summarized by the State Court: "On April 17, 2019, Short filed his Objection to Action Based on Unauthorized and Misleading Notice/Request to Submit Re: Rule 33 Attorney Fees. On April 23, 2019, Short filed a Motion to Strike Purported Rule 73(d) 'Request for Fees' and Request for Hearing and Motion to Bar Plaintiffs from Recovering Costs on Appeal and to Release Cost Bonds and Request for Hearing. Then, on April 24, 2109, Mr. Short filed his Procedural Inquiry and Provisional Motion to Extend time of Objection to Evidence in Reply re: Rule 73(d) Request for Fees." ECF No. 43 at 140 (Ex. 9).

[150] *Id*. at 141 (Ex. 9).

[151] *Id*. at 145 (Ex. 9).

After denying the Debtor's motions and reviewing the affidavit for costs and fees, the State

Court awarded fees of $14,770.00 and costs of $260.80 in the First Appeal involving the Rule 11

sanctions. As to the Second Appeal involving the September 2008 Ruling, the State Court awarded

fees of $13,492.50 and costs of $134.54. In total, the State Court awarded damages against the

Debtor of $28,657.84. The State Court memorialized this amount in a judgment entered on May

22, 2019 that included interest at 4.75% from May 31, 2019.[152]

### (d). The Debtor is Collaterally Estopped From Challenging the Rulings Regarding the Rule 33 Sanction Damages.

As to the requirements for issue preclusion, the Court makes the following findings: (1)

the Debtor was the party to the Rule 33 sanctions because they were imposed against him

personally as the appellant in the First Appeal and as counsel in the Second Appeal; (2) the issues

and findings for the Rule 33 sanctions are identical to those that are relevant to this Court's

determination whether the Debtor committed a willful and malicious injury under § 523(a)(6); (3)

the award of Rule 33 sanctions was completely, fully, and fairly litigated; and (4) the rulings of

the Utah Court of Appeals awarding Rule 33 sanctions, and the State Court's order fixing the

amount of such sanctions are final. Thus, the Court concludes that the doctrine of collateral

estoppel applies to the rulings made in connection with the Rule 33 sanctions in the First Appeal

and the Second Appeal.

The Court finds the following rulings cited to above to be relevant as to whether the Debtor

caused a willful and malicious injury: (1) the appeals were both frivolous and filed for purposes

of delay; (2) the Debtor distorted the record on appeal; (3) the Debtor refused to accept and sought

to delay enforcement of the State Court's prior rulings; (3) the Debtor engaged in an "abusive

---

[152] *Id*. at 150 (Ex. 10).

litigation strategy"; and (4) the Debtor engaged in a "long-standing pattern of abusive and obstructive conduct." As noted above, a frivolous appeal is one that is "not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." An appeal filed for purposes of delay is "one interposed for any improper purpose such as to harass, cause needless increase in the cost of litigation, or gain time that will benefit only the party filing the appeal . . . ." Black's Law Dictionary defines abusive litigation tactics as "[t]actics in litigation or negotiation intended to vex, harass, or intimidate an adverse party, to drive up that party's costs, or to delay the proceedings rather than conclude a matter by agreement or adjudication."[153]

Consequently, the Court finds that the Debtor's conduct in filing and prosecuting the appeals, coupled with his subsequent actions challenging the rulings of the Utah Court of Appeals, constitute willful acts that were done by the Debtor with the malicious and subjective intent to harm Ross through increased costs and delay, and for which the Debtor had no legally cognizable justification or excuse. Further, the Debtor's actions resulted in a particularized injury to Ross in the amount of $28,657.84 with interest at 4.75% from May 31, 2019. Thus, the Court finds this debt amount to be nondischargeable under § 523(a)(6).

> ### 4. The State Court's Rulings in the July 2019 Vexatious Litigant Order, Along with the Related Award of Sanctions, Support a Finding of Willful and Malicious Injury Under § 523(a)(6).
>
> #### (a.) The Vexatious Litigant Order.

As a result of the Debtor's continually sanctionable conduct in the *Ross v. GFS* litigation, Ross brought a motion under Utah R. Civ. P. 83 for a ruling that the Debtor was a vexatious litigant.

---

[153] *Abusive Tactics*, Black's Law Dictionary (11th ed. 2019).

Utah R. Civ. P. 83 allows a state court to declare a party a vexatious litigant if such party persists in re-litigating previously decided claims; files unmeritorious pleadings; files papers that contain redundant, immaterial, impertinent, or scandalous matters; or engages in tactics that are frivolous or solely for the purpose of harassment or delay.[154] The purpose of Utah R. Civ. P. 83 "is to avoid waste of litigant and judicial resources."[155]

Based on clear and convincing evidence, the State Court entered its memorandum decision and order on July 12, 2019, finding that the Debtor was indeed a vexatious litigant (the "Vexatious Litigant Order"). The State Court made the following findings in support of its ruling.

1.      The Debtor had engaged in "improper conduct" based on the findings of the Utah Court of Appeals that the Debtor had engaged in "abusive and obstructive conduct . . . [that] appear designed to make this litigation prohibitively expensive." Further, that appeals were an effort by the Debtor "to gain time while he avoids paying the sanctions ordered by the district court."[156]

2.      The Debtor had frivolously and repeatedly re-litigated the issue of jurisdiction.[157]

3.      The Debtor had frivolously and repeatedly re-litigated the validity of the 2015 [sanction] judgment.[158]

4.      The Debtor had frivolously and repeatedly re-litigated the issue of the post-remand attorney fees and costs.[159]

---

[154] Utah R. Civ. P. 83(a).

[155] *NPEC, LLC v. Miller*, 453 P.3d 654, 657 (Utah Ct. App. 2019).

[156] ECF No. 43 at 153-154 (Ex. 11).

[157] *Id*. at 154-55 (Ex. 11).

[158] *Id*. at 155-56 (Ex. 11).

[159] *Id*. at 156-57 (Ex. 11).

5.      The Debtor's two appeals in *Ross v. GFS* were "frivolous and pursued for purposes of delay and harassment."[160]

6.      The Debtor "filed unmeritorious papers and papers that contained redundant matter; and (b) engaged in tactics that are frivolous and solely for purposes of delay."[161]

The State Court summarized its findings:

> Mr. Short continues to threaten litigation against Plaintiffs and against Plaintiffs' counsel, with the apparent aims of intimidation and harassment. Mr. Short abuses the fact that jurisdiction may be raised at any time, and is not waivable, as a basis [to] reargue issues which have been repeatedly and affirmatively decided. Mr. Short has shown his disregard of monetary sanctions, whose imposition he appears to be using as a means to submit to multiply filings and impose costs and fees on Plaintiffs and their counsel.[162]

The State Court then imposed the following restrictions: (1) the Debtor must obtain leave of court and to file any further paper; (2) the Debtor must obtain legal counsel before proceeding in *Short v. Bogart*; and (3) the Debtor must obtain leave of court and retain legal counsel before filing any future claims against Ross or their legal counsel.[163]

### *(b). The Vexatious Litigant Sanctions Order.*

On July 16, 2019, Ross brought a motion for fees and costs in prosecuting the vexatious litigant motion. In the interim, on September 26, 2019, the Utah Court of Appeals affirmed the Vexatious Litigant Order finding that "[b]ased upon the pattern of repeated obstructive and dilatory conduct as outlined above, the district court did not err in determining that Short is a vexatious litigant."[164]

---

[160] *Id*. at 160 (Ex. 11).
[161] *Id*. at 161 (Ex. 11).
[162] *Id*.
[163] *Id*. at 164-65 (Ex. 11).
[164] *Id*. at 179 (Ex. 14).

On October 8, 2019, the State Court ruled on Ross's motion for fees and costs:

> In the Vexatious Litigant Order, this Court found that Mr. Short had, in numerous motions, sought to re-litigate issues of fact and law already decided by the Court and by the Court of Appeals without proper grounds and for improper purposes, and filed numerous frivolous motions, opposition papers, and objections. See Vexatious Litigant Order, pp. 2-10 (detailing offending papers). Mr. Short's conduct caused needless delay and needlessly increased fees of Plaintiffs. Mr. Short's conduct delayed this case, disrupted litigation, obstructed the Court's ability to resolve issues and comply with the mandate of the Court of Appeals to award Plaintiffs' their reasonable costs and fees under Rule of Appellate Procedure 33. Mr. Short's misconduct imposed damages on Plaintiffs. It is appropriate that Plaintiffs be compensated by Mr. Short for the damages his misconduct has caused them.[165]

As a result of these findings, and those in the Vexatious Litigant Order, the State Court on November 27, 2019 awarded Ross costs and fees of $39,535.00 along with accrued interest of 2% above the federal post-judgment rate beginning December 11, 2019.[166]

As to the requirements for issue preclusion, the Court makes the following findings: (1) The Debtor was the party to the vexatious litigant motions and orders; (2) the issues and findings in the vexatious litigant orders are identical to those that are relevant to this Court's determination whether the Debtor committed a willful and malicious injury under § 523(a)(6); (3) the vexatious litigant motions were completely, fully, and fairly litigated; and (4) the vexatious litigant orders are final. Thus, the Court concludes that the doctrine of collateral estoppel applies to the rulings made in the Vexatious Litigant Order and the sanction order arising therefrom.

The following findings in the vexatious litigant orders preclusively establish the elements of § 523(a)(6): (1) the Debtor intended to drive up litigation costs; (2) the Debtor intended to take

---

[165] *Id*. at 169 (Ex. 12).
[166] *Id*. at 173 (Ex. 13).

unconscionable advantage of Ross; (3) the Debtor attempted to threaten, bully, and strong-arm Ross into abandoning their efforts to collect on the sanctions; (4) the Debtor filed the *Short v. Bogart* Complaint to obtain an outcome to which he was not entitled and to frustrate justice; and (5) the Debtor lacked an honest belief in the propriety of his actions.

Consequently, the Court finds that the Debtor's conduct as a vexatious litigant constitutes willful acts that were done by the Debtor with the malicious and subjective intent to harm Ross through increased costs and delay, and for which the Debtor had no legally cognizable justification or excuse. Further, these actions by the Debtor resulted in a particularized injury to Ross in the amount of $39,535.00 along with accrued interest of 2% above the federal post-judgment rate beginning December 11, 2019. Thus, the Court finds this debt amount to be nondischargeable under § 523(a)(6).

> **5. The State Court's Rulings in *Short v. Bogart* in the November 4, 2019 "Order re Motion for Entry of Judgment and Award of Fees and Costs" Support a Finding of Willful and Malicious Injury Under § 523(a)(6).**

In July 2019 the Debtor, as a party-plaintiff and not as legal counsel, filed a complaint against the Plaintiffs to this adversary proceeding that he later amended (the "*Short v. Bogart* Complaint").[167] On Sept 3, 2019, the State Court entered its order striking both complaints as being "riddled with redundancies, immaterial facts and conclusions, and scandalous matter."[168] It further held that the *Short v. Bogart* Complaint contained "'material that is offensive, inappropriate, and disrespectful.'"[169] The order gave the Debtor until September 10, 2019 to file an appropriate

---

[167] *Id*. at 190 (Ex. 16) and 216 (Ex. 17).

[168] *Id*. at 253 (Ex. 18).

[169] *Id*. at 255 (Ex. 18) citing to *Peters v. Pine Meadow Ranch Home Ass'n*, 151 P.3d 962 (Utah 2007).

complaint or the *Short v. Bogart* "case will be deemed closed."[170] The Debtor did not amend his complaint.

On September 16, 2019, Ross brought a motion under Utah Code Ann. § 78B-5-825(1) for costs and fees incurred in responding to the *Short v. Bogart* Complaint. This code provision provides that a Utah state court "shall award reasonable attorney fees to a prevailing party if the court determines that . . . the action was without merit and not brought or asserted in good faith."

In November 2019, the State Court granted the motion, noting that a party is guilty of acting in bad faith under § 78B-5-825(1) if "(1) the party lacked an honest belief in the propriety of the action; (2) the party intended to take unconscionable advantage of others, or (3) the party intended to or acted with the knowledge that the activities in question would hinder, delay, or defraud others."[171] The State Court went on to make the following findings:

1. The Debtor filed his complaint "in an effort to drive up litigation costs" for Ross and "to try and intimidate them into abandoning" the *Ross v. GFS* case and efforts to collect the substantial sanction awards against the Debtor. "These motives qualify under section 78B-5-825 as acting with knowledge that the action would hinder, delay, or defraud others."

2. The Debtor "intended to take unconscionable advantage" of Ross.

3. The "fundamental purpose" of the Debtor's complaint "was to strong-arm" Ross to abandon "their efforts to enforce the monetary sanctions awarded against [the Debtor] in *Ross v. GFS* case and appeals in that case."

4. The Debtor "repeatedly threatened to sue" Ross unless they gave up efforts to enforce the sanction awards or the surety the Debtor posted in the *Ross v. GFS* appeals.

---

[170] *Id*.

[171] *Id*. at 262 (Ex. 19) (citing to *Valcarce v. Fitzgerald*, 961 P.2d 305, 316 (Utah 1998)).

5.      The Debtor "sought to use his Complaints to obtain a benefit to which he had no legitimate claim, to frustrate justice, and vitiate the sanctions awarded against him."

6.      The Debtor "lacked an honest belief in the propriety of this action."[172]

7.      The Debtor served the Complaint at a hearing in *Ross v. GFS* "as part of his attempt to bully Defendants into giving up their sanctions against him."[173]

The Court concludes as a matter of law that the findings of the State Court in the *Short v. Bogart* case are res judicata in this adversary proceeding. The Debtor was the party in *Short v. Bogart*; the issues decided in dismissing the *Short v. Bogart* Complaint are the same as are relevant to this § 523(a)(6) action; the matter was completely, fully, and fairly litigated; and the orders entered in *Short v. Bogart* are final.

The State Court's findings in *Short v. Bogart* preclusively establish the elements of § 523(a)(6). Specifically, that the Debtor's filing of the *Short v. Bogart* Complaint was a willful act that was done by the Debtor with the malicious, subjective, and actual intent to harm Ross through increased cost and delay, and for which the Debtor had no legally cognizable justification or excuse. Further, they establish that the Debtor's actions resulted in a particularized injury to Ross in the amount of $16,196.50 plus accrued interest at the rate of 4.75% from December 25, 2019.[174] Thus, the Court finds this debt amount to be nondischargeable under § 523(a)(6).

---

[172] *Id*. at 261-263 (Ex. 19).

[173] *Id*. at 264 (Ex. 19).

[174] *Id*. at 276 (Ex. 22)

6.   **The September 2019 Rulings of the Utah Court of Appeals in the Third Appeal that Awarded Damages Against the Debtor are Insufficient to Support a Finding of Willful and Malicious Injury Under § 523(a)(6).**

As observed by the Utah Court of Appeals, the Debtor initiated nine appeals, but six "were dismissed for lack of jurisdiction or because Short failed to perfect the appeals."[175] The third appeal was from the July 2019 Vexatious Litigant Order and the State Court's April 2019 entry of sanctions under Utah R. App. P. 33, as directed by the Utah Court of Appeals in the two appeals in *Ross v. GFS* (the "Third Appeal").

The tone of the ruling in the Third Appeal evidences the court's exasperation with the Debtor and his perpetual efforts to undo every adverse ruling since 2008. Ross requested damages under Utah R. App. P. 33 for their costs and fees, and the Utah Court of Appeals agreed and remanded to the State Court to determine the amount of such award. However, the Third Appeal does not contain the specific findings made in the first two appeals regarding the Debtor's willful conduct and subjective malicious intent.

The Utah Court of Appeals remanded to the State Court to determine the amount of the damages. On November 15, 2019, Ross filed its declaration of costs and fees. As was his practice, the Debtor filed a motion for extension of time to object to the declaration, which was denied by the State Court.[176] However, before the State Court could rule on the allowance of costs and fees, the Debtor filed his bankruptcy petition. On April 30, 2019, this Court modified the bankruptcy stay to allow the State Court to liquidate, but not take any action to collect, the damages pursuant to the pre-petition remand by the Utah Court of Appeals. The State Court set a schedule for a ruling on the declaration of costs and fees, but the Debtor failed to timely assert an objection. Pursuant

---

[175] *Id*. at 177 (Ex. 14).
[176] *Id*. at 184 (Ex. 15).

to its order entered on July 1, 2020, the State Court denied the Debtor's motions for leave to file

an objection to the fees and a motion for a continuance based on the following findings:

> (a) good cause does not exist for leave to file the Motions, which are lacking in
> merit, (b) they appear to be further efforts by Mr. Short to evade his obligations to
> pay sanctions and to comply with the orders of this Court, (c) they are a continuation
> Mr. Short's abusive litigation tactics, and (d) they are untimely.[177]

The State Court then awarded fees of $10,920.00 and costs of $0.00 under Utah R. App. P.

33 and Utah R. Civ. P. 73(d), with such amount to accrue interest at 2% above the federal post-

judgment rate beginning July 15, 2020. The State Court also awarded Ross "all costs and fees in

enforcing this order."

While the State Court again made findings regarding the Debtor's meritless arguments and

abusive litigation tactics, those rulings relate to denying the Debtor's motions to extend the time

object to the fees and to continue the hearing thereon. They do not relate to the award of costs and

fees under Utah R. App. P. 33 as ordered pre-petition by the Utah Court of Appeals. Thus, while

these findings are res judicata, they are not conclusive as to whether the damages ordered by the

Utah Court of Appeals arose from a willful and malicious injury by the Debtor.

The Court assumes that the Utah Court of Appeals awarded fees under Utah R. App. P. 33

in the Third Appeal for the same reasons it articulated in the First and Second Appeals (e.g.,

abusive and obstructive conduct by the Debtor intended to make the litigation prohibitively

expensive). But the presumption of a Debtor's entitlement to a discharge should not be rebutted

based on assumed but unstated findings by the Utah Court of Appeals. Therefore, the Court must

deny Plaintiffs' motion for summary judgment as to the damages of $10,920.00 awarded by the

State Court on July 1, 2020.

---

[177] *Id*. at 185 (Ex. 15).

### F. The Bankruptcy Court Cannot Award Costs and Fees Under 28 U.S.C. § 1927.

Plaintiffs ask for attorney's fees and costs under 28 U.S.C. § 1927. This section provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Plaintiffs argue that such sanctions should be awarded because the Debtor refuses to accept the findings and consequences of the State Court Rulings and continues to make "arguments he should know are destined to fail yet again."[178]

However, based on controlling Tenth Circuit law, this Article I bankruptcy court is excluded from the ambit of 28 U.S.C. § 1927; thus, it lacks jurisdiction to issue any ruling under this section. *See Jones v. Bank of Santa Fe (In re Courtesy Inns)*, 40 F.3d 1084, 1086  (10th Cir. 1994) ("[W]e must hold that bankruptcy courts are not within the contemplation of [28 U.S.C. §] 1927."). Therefore, Plaintiffs request for costs and fees must be denied.

## V.    CONCLUSION

While the Debtor perpetually contests the correctness, competency, and fairness of the State Court Rulings, res judicata precludes him from evading the consequences of their findings of fact and conclusions of law. The State Court Rulings are binding on the Debtor, and they are binding on this Court. And except for the final award of sanctions, they are sufficient to establish the elements of § 523(a)(6) and for the Court to grant Plaintiffs partial summary judgment as set forth below.

---

[178] *Id*. at 39.

1.      The State Court's findings in its December 2014 order awarding Rule 11 sanctions against the Debtor support a finding of willful and malicious injury under § 523(a)(6). Thus, the Court grants summary judgment in favor of Plaintiffs Yan Ross and Randi Wagner and finds that the sanction amount of $27,981.07 with interest at 2.27% from March 11, 2015 is nondischargeable.

2.      The September 2018 findings of the Utah Court of Appeals in awarding damages against the Debtor under Utah R. App. P. 33, along with the subsequent rulings by the State Court on remand, support a finding of willful and malicious injury under § 523(a)(6). Thus, the Court grants summary judgment in favor of the Plaintiffs Yan Ross and Randi Wagner and finds that the sanction amount of $28,657.84 with interest at 4.75% from May 31, 2019 is nondischargeable.

3.      The State Court's rulings in the July 2019 Vexatious Litigant Order, coupled with the findings in the October 8, 2019 sanctions order, support a finding of willful and malicious injury under § 523(a)(6). Thus, the Court grants summary judgment in favor of Plaintiffs Yan Ross and Randi Wagner and finds that the sanction amount of $39,535.00 along with accrued interest of 2% above the federal post-judgment rate beginning December 11, 2019 is nondischargeable.

4.      The State Court's rulings in *Short v. Bogart* in the November 4, 2019 "Order re Motion for Entry of Judgment and Award of Fees and Costs" support a finding of willful and malicious injury under § 523(a)(6). Thus, the Court grants Plaintiffs summary judgment and finds that the sanction amount of $16,196.50 plus accrued interest at the rate of 4.75% from December 25, 2019 is nondischargeable.

5.      The September 2019 rulings of the Utah Court of Appeals in the Third Appeal that awarded damages against the debtor are insufficient to support a finding of willful and malicious

injury under § 523(a)(6). Therefore, summary judgment is denied as to the sanction award of $10,920 under Utah R. App. P. 33 and Utah R. Civ. P. 73(d).

An order consistent with this opinion will follow.

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the **MEMORANDUM DECISION GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

- David P. Billings dbillings@fabianvancott.com, jwinger@fabianvancott.com;mdewitt@fabianvancott.com
- John H. Bogart jbogart@telosvg.com
- Douglas R. Short mail@consumerlawutah.com, douglasrshort@gmail.com;as@consumerlawutah.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

John H. Bogart
500 Westover Dr. #12745
Sanford, NC 27330

Sean Egan & Yan Ross
500 Westover Dr. #12745
Sanford, NC 27330

Douglas Raymond Short
10763 South 2000 East
Sandy, UT 84092

Telos Ventures Group PLLC
500 Westover Dr. #12745
Sanford, NC 27330

Randi Wagner
500 Westover Dr. #12745
Sanford, NC 27330